David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 601-2610
dbower@monteverdelaw.com
*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ETTEL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NIMBLE STORAGE, INC., SURESH VASUDEVAN, VARUN MEHTA, FRANK CALDERONI, JAMES J. GOETZ, WILLIAM D. JENKINS, JR., JERRY M. KENNELLY, WILLIAM J. SCHROEDER, and ROBERT W. KELLY,<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**<br>1. Violation of §14(e) of Exchange Act<br>2. Violation of §14(d)(4) of Exchange Act<br>3. Violation of §20(a) of Exchange Act<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff David Ettel ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Nimble Storage, Inc. ("Nimble" or the "Company") against Nimble and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Nimble, the "Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14d-9, 17 C.F.R. 240.14d-9, in connection with the tender offer ("Tender Offer") by Nebraska Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Hewlett Packard Enterprise Company ("Hewlett Packard"), to purchase all of the issued and outstanding shares of Nimble common stock for $12.50 per share (the "Offer Price").

2. On March 17, 2017, in order to convince Nimble shareholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(e), 14(d)(4) and 20(a) of the Exchange Act. In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) the sales process; (ii) Nimble's financial projections; (iii) the valuation analyses performed by the Company's financial advisor, Goldman, Sachs & Co. ("Goldman"); and (iv) a significant conflict of interest Goldman faced.

3. The Tender Offer is scheduled to expire 12:00 midnight, New York City time, on April 13, 2017 (the "Expiration Date"). It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's shareholders prior to the forthcoming Expiration Date so they can properly determine whether or not to tender their shares.

1
**CLASS ACTION COMPLAINT**

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from closing the Tender Offer or taking any steps to consummate the proposed merger unless and until the material information discussed below is disclosed to Nimble shareholders or, in the event the proposed merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e), 14(d)(4) and 20(a) of the Exchange Act.

6. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Nimble maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

8. Plaintiff is, and at all relevant times has been, a shareholder of Nimble.

9. Defendant Nimble is a Delaware corporation headquartered in San Jose, California. Nimble provides enterprise storage and back-up solutions. The Company offers hybrid storage arrays, virtual server infrastructure, and flash memory for restoring and backups.

10.     Individual Defendant Suresh Vasudevan is, and has been at all relevant times, Nimble's Chief Executive Officer and a director of the Company.

11.     Individual Defendant Varun Mehta is, and has been at all relevant times, Nimble's Vice President of Engineering and a director of the Company.

12.     Individual Defendant Frank Calderoni is, and has been at all relevant times, a director of the Company.

13.     Individual Defendant Jim Goetz is, and has been at all relevant times, a director of the Company.

14.     Individual Defendant William Jenkins is, and has been at all relevant times, a director of the Company.

15.     Individual Defendant Jerry Kennelly is, and has been at all relevant times, a director of the Company.

16.     Individual Defendant William Schroeder is, and has been at all relevant times, a director of the Company.

17.     Individual Defendant Bob Kelly is, and has been at all relevant times, a director of the Company.

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Nimble (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

19.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable. As of March 2, 2017, there were approximately 88.9 million shares of Nimble common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public shareholders of Nimble will be ascertained

through discovery;

b.   There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

    i)   whether Defendants have misrepresented or omitted material information concerning the proposed merger in the Recommendation Statement, in violation of Sections 14(e) and 14(d)(4) of the Exchange Act;

    ii)  whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

    iii) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to tender their shares based on the materially incomplete and misleading Recommendation Statement.

c.   Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.   Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.  A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I.  Nimble's History and Strong Growth Prospects

20.  Nimble was incorporated in 2007 and is headquartered in San Jose, California. The Company provides flash storage platforms primarily in the United States. Nimble's storage systems and software enhance the performance of a range of business applications and workloads, including virtual servers and desktops, databases, email, collaboration, and data analytics

21.  The Offer Price appears inadequate in light of Nimble's recent financial performance and strong growth prospects. Indeed, while the Company claims that shareholders will receive a premium for their shares, the Offer Price is 12% less than the $14.00 per share price target set by Maxim Group just two months prior to the announcement of the merger. The consideration is also less than the $14.00 per share price target set by Summit Redstone Partners on November 23, 2016.

22.  The Offer Price also appears inadequate in light of the Company's recent financial performance. Specifically, on March 7, 2017, Nimble announced the following impressive financial results for its fourth quarter and fiscal year 2017: Total revenue for the quarter increased 30% to $117.0 million, up from $90.1 million in the fourth quarter of fiscal 2016; and for the fiscal year, total revenue was $402.6 million, compared to $322.2 million in fiscal 2016, representing growth of 25% year-over-year.

23.  In sum, the Offer Price appears to inadequately compensate Nimble shareholders for their shares. It is therefore imperative that Nimble shareholders receive the material

information that has been omitted from the Recommendation Statement, so that they can make a fully informed decision concerning whether or not to tender their shares.

**II.      The Merger Agreement's Deal Protection Provisions Deter Superior Offers**

24.     The Individual Defendants have agreed to certain deal protection provisions in the Merger Agreement that operate conjunctively to deter other suitors from submitting a superior offer for the Company's assets.

25.     First, the Merger Agreement contains a no-shop provision that prohibits the Company or the Individual Defendants from taking any affirmative action to obtain a better deal for Nimble shareholders. The Merger Agreement generally states that the Company and the Individual Defendants shall not: (i) initiate, solicit, propose or knowingly encourage or knowingly facilitate any inquiry or the making of any proposal or offer that constitutes, or would reasonably be expected to lead to, an acquisition proposal; (ii) engage in, continue or otherwise participate in any discussions or negotiations relating to any acquisition proposal; or (iii) provide any non-public information to any person in connection with any acquisition proposal.

26.     Additionally, the Merger Agreement grants Hewlett Packard recurring and unlimited matching rights, which provides it with: (i) unfettered access to confidential, non-public information about competing proposals from third parties which it can use to prepare a matching bid; and (ii) several days to negotiate with Nimble, amend the terms of the Merger Agreement and make a counter-offer in the event a superior offer is received.

27.     The non-shop and matching rights provisions essentially ensure that a superior bidder will not emerge, as any potential suitor will undoubtedly be deterred from expending the time, cost, and effort of making a superior proposal while knowing that Hewlett Packard can easily foreclose a competing bid. As a result, these provisions unreasonably favor Hewlett Packard, to the detriment of Nimble's public shareholders.

28.     Lastly, the Merger Agreement provides that Nimble must pay Hewlett Packard a termination fee of $40.8 million in the event the Company elects to terminate the Merger Agreement to pursue a superior proposal. The termination fee provision further ensures that no

competing offer will emerge, as any competing bidder would have to pay a naked premium for the right to provide Nimble shareholders with a superior offer.

29. Ultimately, these preclusive deal protection provisions restrain Nimble's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.

30. Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that Nimble shareholders receive all material information necessary for them to make a fully informed decision regarding whether or not to tender their shares.

### III. The Materially Incomplete and Misleading Recommendation Statement

31. On March 17, 2017, Defendants caused the Recommendation Statement to be filed with the SEC. The Recommendation Statement has been disseminated to the Company's shareholders, and solicits the Company's shareholders to tender their shares in the Tender Offer. The Individual Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Recommendation Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act.

32. First, the Recommendation Statement fails to provide material information concerning the Company's financial projections. Specifically, the Recommendation Statement fails to provide projections for projected interest expense and depreciation and amortization. The omission of such projections renders the non-GAAP projections for Adjusted EBITDA on page 39 of the Recommendation Statement materially incomplete and therefore misleading.

33. The omitted line item projections are necessary for shareholders to properly assess the various non-GAAP adjustments that were made to the Adjusted EBITDA projections included in the Recommendation Statement, and failure to disclose such metrics renders the current

projections in the Recommendation Statement incomplete and misleading. Simply put, if Defendants are going to use "fantasy math" in the Recommendation Statement, they must show their work.[1]

34. With respect to Goldman's Selected Companies Analysis and Selected Transactions Analysis, the Recommendation Statement fails to disclose the individual multiples Goldman calculated for each of the companies and transactions used in these analyses. A fair summary of such analyses requires the disclosure of the individual multiples for each company and transaction utilized. Merely providing the range that a banker applied is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied valuation of the Company. Further, the Recommendation Statement fails to disclose the illustrative range of values per share that Goldman calculated in connection with these analyses. The omission of the individual multiples and valuation ranges renders the summary of these analyses set forth on pages 32-35 of the Recommendation Statement materially incomplete and misleading.

35. With respect to Goldman's review of the premiums received in connection with other transactions, the Recommendation Statement fails to disclose the high, low, and median premiums Goldman observed for the selected transactions. The omission of such information renders the summary of Goldman's analysis on page 35 of the Recommendation Statement incomplete and misleading.

36. With respect to Goldman Illustrative Discounted Cash Flow Analysis, the Recommendation Statement fails to disclose the inputs and assumptions underlying the calculation of the Company's cost of capital, which formed the basis for the discount rate range of 12.0% to 14.0% used by Goldman in its analysis. Further, the Recommendation Statement fails to disclose the exit multiples that were implied from Goldman's analysis. The omission of this information

---

[1] Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES (April 22, 2016), https://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0

1 renders the summary of this analysis on page 36 of the Recommendation Statement incomplete and misleading.

37. The Recommendation Statement also fails to provide sufficient information for shareholders to assess a significant conflict of interest Goldman faced. Specifically, according to Bloomberg, Goldman currently holds 13,225,264 shares of Hewlett Packard stock, valued at approximately *$307,222,883* based on Hewlett Packard's current trading price. Such information is material to Nimble shareholders, and the omission of such information renders the vague statement on page 37 of the Recommendation Statement that Goldman "may at any time" hold positions and investments in Hewlett Packard materially incomplete and misleading, because Goldman *does in fact currently hold a significant position in Hewlett Packard*. Indeed, the value of Goldman's position Hewlett Packard significantly exceeds the $15 million fee it stands to make for its advisory services to Nimble. It is imperative for shareholders to be able to understand what factors might influence a financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a transaction must be carefully considered in assessing how much credence to give its analysis.

38. In sum, the omission of the above-referenced information renders statements in the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violation of Section 14(e) of the Exchange Act)**

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

41. Defendants have issued the Registration Statement with the intention of soliciting Nimble shareholders to tender their shares. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide material information regarding, amongst other things: (i) Nimble's financial projections; (ii) the valuation analyses performed by Goldman; and (iii) a significant conflict of interest Goldman faced.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e). The Individual Defendants were therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

43. The Individual Defendants were privy to and had knowledge of the projections for the Company and the details concerning Goldman's valuation analyses and conflicts of interest. The Individual Defendants were reckless in choosing to omit material information from the Recommendation Statement, despite the fact that such information could have been disclosed without unreasonable efforts.

44. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision regarding whether or not to tender their shares if such misrepresentations and omissions are not corrected prior to the Expiration Date. Plaintiff and the Class have no adequate remedy at law.

Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9,17 C.F.R. § 240.14d-9)**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

47. SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

48. In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

49. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omissions render the Recommendation Statement false and/or misleading.

50. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, Defendants undoubtedly reviewed the omitted material information in connection with approving the proposed merger.

51. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision regarding whether or not to tender their shares if such misrepresentations and omissions are not corrected prior to the Expiration Date. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III
### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

52. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of Nimble within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Nimble, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement by Plaintiff to be misleading prior to the date the Recommendation Statement was issued, and had the ability to prevent the issuance of the false and misleading statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants that shareholders tender their shares in the Tender Offer. They were thus directly involved in preparing this document.

56. In addition, as the Recommendation Statement sets forth, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the merger agreement. The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e), 14(d)(4) and Rule 14d-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

59. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying

1  Plaintiff as Class Representative and his counsel as Class Counsel;

2      B.      Enjoining Defendants and all persons acting in concert with them from closing the
3  Tender Offer or consummating the proposed merger, unless and until the Company discloses the
4  material information discussed above which has been omitted from the Recommendation
5  Statement;

6      C.      Directing the Defendants to account to Plaintiff and the Class for all damages
7  sustained as a result of their wrongdoing;

8      D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable
9  attorneys' and expert fees and expenses;

10     E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: March 24, 2017

Respectfully submitted,

*/s/ David E. Bower*
David E. Bower SBN 119546
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (310) 446-6652
Fax: (212) 601-2610
Email: dbower@monteverdelaw.com

*Counsel for Plaintiff*

**OF COUNSEL**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY 10118
Tel: (212) 971-1341
E-mail: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*